IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JACKY J. JONES,                               Case No. 3:12-cv-00913-AA
                                                 OPINION AND ORDER
            Plaintiff,

       v.

CAROLYN W. COLVIN,
Commissioner of Social
Security,

            Defendant.
_____

Tim D. Wilborn
Wilborn Law Office, P.C.
P.O. Box 370578
Las Vegas, NV 89137
       Attorney for plaintiff

S. Amanda Marshall
United States Attorney
Adrian L. Brown
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201

Kathy Reif
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075
       Attorneys for defendant

AIKEN, Chief Judge:

Plaintiff Jacky J. Jones brings this action pursuant to the Social Security Act ("Act") to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's applications for Title II disability insurance benefits ("DIB") and Title XVI supplementary security income ("SSI") under the Act. For the reasons set forth below, the Commissioner's decision is reversed and remanded for further proceedings.

## PROCEDURAL BACKGROUND

Plaintiff filed his applications for DIB and SSI on February 18, 2005. Tr. 58-62, 63-65. Both applications were denied initially and upon reconsideration. Id. After a hearing which took place on November 8, 2007, the Administrative Law Judge ("ALJ") issued a decision finding plaintiff not disabled within the meaning of the Act. Plaintiff requested review by the Appeals Council, which was declined. Tr. 3-6. Plaintiff then filed a civil action, which upon stipulation of the parties, resulted in an order by this Court remanding the matter for further proceedings. Tr. 861 See Civil No. 6:10-cv-00661-AA. After a second hearing on December 14, 2011, the ALJ issued another decision again finding plaintiff not disabled. Tr. 832-48. The Appeals Council again declined plaintiff's request for review, making the 2011 decision the final decision of the Commissioner. Plaintiff then filed his second complaint, which is now before the Court.

Page 2 - OPINION AND ORDER

### STATEMENT OF FACTS

Born December 29, 1951, plaintiff was 45 years old on the alleged onset date of disability, June 3, 1997. He was 51 years old on his date last insured for Title II benefits, December 31, 2002. Plaintiff earned his GED and was employed as a construction worker from 1974 until his alleged onset date. Tr. 91, 95. On June 3, 1997, plaintiff injured his neck and back in a workplace accident resulting in a disability due to a combination of impairments including degenerative disc disease, limited mobility, numbness, back and neck pain, and headaches. Tr. 90.

### STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to

establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled.

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national and local economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ's FINDINGS

At step one of the five step sequential evaluation process outlined above, the ALJ found that plaintiff did not engage in substantial gainful activity during the adjudication period between June 3, 1997, and his date last insured of December 31, 2002. Tr. 837. At step two, the ALJ determined that plaintiff had the following severe impairments through the date last insured: strain of the cervical spine and mild degenerative disc disease at C5-6. Tr. 838. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the requirements of a listed impairment. Id.

Because he did not establish disability at step three, the ALJ continued to evaluate whether plaintiff's impairments affected his ability to work. The ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform

generally light work . . . subject to limitations and

Page 5 - OPINION AND ORDER

modifications . . . includ[ing] lifting and carrying 5 to 15 pounds frequently, and 25 to 40 pounds occasionally, but overhead lifting and carrying is limited to 10 pounds, and pushing and pulling with the upper extremities is limited to 25 pounds occasionally and 15 pounds frequently. Sitting is limited to 30 minutes at a time and a total of 2 hours in an 8-hour day. Standing and walking are each limited to one hour at a time and a total each of 4 hours in an 8-hour day. Climbing stairs and ramps, overhead reaching, and grasping can be done frequently; bending, balancing, stooping, kneeling, and crawling can be done occasionally; and climbing ropes, ladders, and scaffolds is limited to minimal.

Tr. 839.

At step four, the ALJ found that plaintiff was unable to perform any past relevant work through the date last insured. Tr. 846. At step five, the ALJ concluded that based on the VE's testimony, plaintiff could perform a significant number of jobs existing in the national economy, including office helper, cashier, and small products assembler. Tr. 847. Accordingly, the ALJ found that plaintiff was not disabled for the adjudication period from June 3, 1997 through December 31, 2002. Id.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) failing to find plaintiff's headaches a severe impairment at step 2; (2) improperly assessing plaintiff's credibility; (3) improperly rejecting the opinion of Dr. Dejan Dordevich, M.D.; (4) improperly rejecting lay witness testimony; and (5) failing to consider plaintiff's alleged manipulative limitations.

I. Step Two

Plaintiff first contends that the ALJ erred by failing to find his headaches were a severe impairment at step two. The step two inquiry is the *de minimis* screening device used to dispose of groundless claims. Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). At step two, a plaintiff must present evidence of an impairment or impairments which are so severe that it "significantly limits [his] physical and mental ability to do basic work activities." 20 C.F.R. § 416.920(c). Where the claimant meets the *de minimis* threshold, the ALJ continues the sequential analysis, considering the effect of all of his impairments, whether severe or non-severe. Social Security Ruling ("SSR") 96-9p, available at 1996 WL 374184 at *5. Therefore, reversible error occurs only when a severe impairment excluded at step two caused additional functional limitations not accounted for in the RFC. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007).

Here, the ALJ resolved step two in plaintiff's favor and proceeded to subsequent steps in the analysis. Tr. 838. Thus, the Court may only find error if additional functional limitations caused by plaintiff's headaches were not accounted for in the RFC. Lewis, 498 F.3d at 911. Plaintiff argues that pain caused by headaches affected his concentration, persistence, and pace, which were not accounted for in the RFC. Pl.'s Op. Br. at 12-13.

In support, plaintiff highlights several sources in the record. First, plaintiff asserts that Dr. Dordevich opined on a

Page 7 - OPINION AND ORDER

2007 checklist form that plaintiff's pain would negatively impact "activities requiring concentration, persistence, and pace." Id.; Tr. 134. However, Dr. Dordevich did not make any specific reference to headaches being the source of pain. Id. Furthermore, for reasons explained below, the ALJ found Dr. Dordevich's post-2002 opinions to be of limited probity. Tr. 843-44. Thus, Dr. Dordevich's opinion that undifferentiated pain impairs plaintiff's concentration, persistence, and pace is not compelling evidence that his headaches were severe under the Act.

Plaintiff also submits that his math and language tutor noted that his headaches interfered with his ability to concentrate. Pl.'s Op. Br. at 12; Tr. 205. Indeed, vocational case manager Jerome Gillis noted that "continuing headaches" had "slowed progress" in plaintiff's math tutoring. Tr. 205. However, Mr. Gillis also suggested that plaintiff had trouble with his "visual tracking system" which possibly caused him to misread numbers. Id. Further, the alleged deficits caused by plaintiff's headaches did not appear to slow plaintiff's English skill progression, as he completed that subject matter with "90% to 100% success." Id. As such, the evidence is at best equivocal.

Plaintiff further asserts that his vocational aptitude tests were compromised by his inability to concentrate due to pain. The test administrator noted that plaintiff "exhibited a good deal of pain behavior" during testing, including "changing positions, trying several different chairs, grimacing, moving stiffly and taking one additional break." Tr. 217. The test administrator

also noticed that plaintiff was "visibly anxious upon arrival" and "appeared fidgety and nervous," and inferred that this anxiety may also have affected the results. Id. As with Dr. Dordevich's opinion discussed above, however, unspecified references to "pain" in the record does not necessarily entail pain caused by headaches as opposed to another of plaintiff's alleged impairments. Thus, there is no indication that plaintiff's headache pain caused any functional impairment beyond that caused by his back and neck pain, which was incorporated in the RFC.

Finally, plaintiff asserts that both he and the lay witness described his headaches as interfering with his concentration. First, as explained in following sections, the ALJ properly discounted the credibility of both plaintiff and the lay witness such that their opinions are of diminished evidentiary value. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005)(The ALJ properly "took into account those limitations for which there was record support that did not depend on [the claimant's] subjective complaints" in favor of those that lacked credibility.). Second, plaintiff's citation to testimony from the hearing in support of his claim makes no reference to headaches at all, but involves a discussion of pain and stiffness resulting from his neck pain. Tr. 810-11; Pl.'s Op. Br. at 12. Finally, while the lay witness's letter did state that plaintiff suffers from severe headaches, there was no reference whatsoever to plaintiff's alleged inability to concentrate due to headaches, or any other

functional impairment arising from headaches. Tr. 85. Instead,
there were references to neck and back pain as limiting his
ability to sit, lift a gallon of milk, stargaze, and complete
other activities. Id. Thus, plaintiff's arguments regarding his
own testimony and the statements of the lay witness are
unavailing.

In sum, while plaintiff alleges severe pain due to
headaches, he has cited no objective evidence in the record which
suggests that his headaches impair his ability to function beyond
the limitations included in the ALJ's modified light duty RFC.
Tr. 839. It is plaintiff's burden to show that his headaches had
more than a minimal effect on his ability to perform work
activities. Burch, 400 F.3d at 683. As plaintiff has not shown
his headaches cause additional functional limitations not
accounted for in the RFC, any step two error was harmless. Lewis,
498 F.3d at 911.

II. Plaintiff's Credibility Assessment

Plaintiff disputes the ALJ's finding that his testimony
described his symptomology outside of the adjudication period
and/or was otherwise incredible. Tr. 840, 841. When a claimant
has medically documented impairments that could reasonably be
expected to produce some degree of the symptoms complained of,
and the record contains no affirmative evidence of malingering,
"the ALJ can reject the claimant's testimony about the severity
of . . . symptoms only by offering specific, clear and convincing

reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th
Cir. 1996)(citation omitted).

A general assertion that plaintiff is not credible is
insufficient; the ALJ must "state which . . . testimony is not
credible and what evidence suggests the complaints are not
credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).
The reasons proffered must be "sufficiently specific to permit
the reviewing court to conclude that the ALJ did not arbitrarily
discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d
748, 750 (9th Cir. 1995)(citation omitted). If, however, the
"ALJ's credibility finding is supported by substantial evidence
in the record, we may not engage in second-guessing." Thomas v.
Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

At the 2007 hearing, plaintiff testified that due to the
workplace accident in 1997, he experienced intense pain in his
neck at all times, which was exacerbated by movement. Tr. 809-10.
He stated that his neck pain radiated down his lower back,
affecting his ability to sit, stand, walk, and perform
'activities of daily living' ("ADL's"). Tr. 811, 813. Plaintiff
further explained that movement caused tingling sensations in his
arms and legs. Tr. 809-811. He described spending days unable to
do anything but sit in his recliner due to neck and back pain.
Tr. 810. Plaintiff noted that he didn't take certain pain
medications because they made him sick, so he took Tylenol until
approximately 2005, when he was prescribed Lyrica. Tr. 816.

Plaintiff further testified that he lives alone but is often assisted by his niece, who lives nearby. Tr. 813. She assists him with cleaning, and her husband assists with yard care. Id. Plaintiff stated that he does little cooking and instead relies on soups and microwave meals. Tr. 814. He does little driving, most often to the store or to his niece's house. Id. He avoids climbing stairs because of pain. Tr. 815.

After summarizing plaintiff's testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but that niece's statements regarding the extent of these symptoms were not fully credible for the following reasons: (1) failure to differentiate between the adjudication period at issue and subsequent time period leading up to the hearing; (2) conservative treatment including long gaps between physician visits; (3) pain allegations which were out of proportion with objective medical evidence; and (4) the ALJ's observations of plaintiff at hearings in 2007 and 2011. Tr. 840-42.

First, the ALJ found that plaintiff's testimony was vague regarding whether plaintiff was describing his pain and impairment during or after the adjudication period. An ALJ may rely on ordinary techniques of credibility evaluation. Smolen, 80 F.3d at 1284. Providing vague testimony with respect to alleged period of disability and pain symptoms is an acceptable rational for an ALJ to discount a claimant's credibility. Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008). Plaintiff generally

Page 12 - OPINION AND ORDER

did not differentiate between the adjudication period of 1997-2002 and the subsequent time period leading to the 2007 hearing while testifying. Tr. 840. The ALJ noted that much of the testimony appeared to describe his current, rather than past, symptoms as plaintiff often spoke in the present tense when describing his daily activities and pain complaints. See Tr. 809-814. The ALJ explained that the medical records available from 2001 and 2002 do not mention complaints about "neck or back pain, limitation in motion, neurological deficits, or sensory complaints." Tr. 615-16, 844. However, two years after the 2002 date last insured, plaintiff reported that his neck pain worsened, particularly following an incident in 2004. Tr. 613, 818-19, 844. As it was unclear whether plaintiff was describing past or current limitations in his testimony, it was acceptable for the ALJ to question its probity.

The ALJ also noted that medical records over the course of the adjudication period revealed conservative treatment. Tr. 840. Conservative treatment can be "sufficient to discount a claimant's testimony regarding [the] severity of an impairment." Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007). During the relevant time period, Dr. Dordevich stated that conservative pain medication was used because plaintiff "did not have evidence of reflex changes or motor loss." Tr. 207. Plaintiff alleged that he primarily used a non-prescription pain medication because more powerful medications made him sick. Tr. 816. Acknowledging that more powerful medication made plaintiff feel ill, the ALJ noted

Page 13 - OPINION AND ORDER

that plaintiff nonetheless failed to seek out alternative
medications. Tr. 840.

The ALJ also highlighted long gaps in plaintiff's treatment.
"The ALJ is permitted to consider lack of treatment in his
credibility determination." Burch, 400 F.3d at 681. The ALJ noted
that plaintiff "either did not need medical treatment, or was
unable to obtain medical treatment, for a significant number of
years" after settling his worker's compensation claim. Tr. 840-
41. Indeed, the record reflects that after February 1999 and
before the date last insured, plaintiff only sought care in
February 2001 for a tetanus shot, December 2001 for a flu shot,
and in July 2002 for a subcutaneous cyst; neck and back pain are
not mentioned at all. Tr. 615, 616, 844. Plaintiff's next
treatment for neck and back pain occurred in October 2004, two
years after the conclusion of the adjudication period, and
immediately following an incident where plaintiff was watching
his brother-in-law climb a ladder, looked upward, and suddenly
felt numbness. Tr. 613, 819. It is permissible to rely on
failure to report symptoms when assessing credibility. Greger v.
Barnhart, 464 F.3d 968, 973 (9th Cir. 2006).

Plaintiff contends that he did not seek medical treatment
for two reasons: first, he was uninsured and unable to afford
care, and second, he was told doctors could not help him. Pl.'s
Reply Br. at 7. Plaintiff's contention that he was unable to
afford medical care is contradicted by the fact that he was able
to procure care in 2001 and 2002 for reasons other than his

Page 14 - OPINION AND ORDER

alleged disabling impairments, and then again when he resumed treatment for his neck and back after the adjudication period. Tr. 840, 844, 919-20. Similarly, plaintiff's assertion that he did not seek treatment for his pain upon learning from his doctors that he was not a good candidate for surgery is belied by the fact that he returned to Dr. Dordevich for treatment in 2004. Tr. 820.

Thus, the ALJ presented clear evidence supporting his finding that plaintiff's conservative treatment and long gaps in care suggested that his pain and impairment allegations were not entirely credible. Even assuming that evidence relating to plaintiff's conservative treatment and gaps in care was capable of more than one rationale interpretation, because the ALJ's finding was reasonable, it must be upheld. See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1198 (9th Cir. 2004).

The ALJ also found that plaintiff's pain allegations were often disproportionate to the objective medical evidence. Tr. 840. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). For example, the ALJ noted that not long after plaintiff's accident, he was given an orthopedic and neurological examination by neurologist Lawrence S. Ziven, M.D. and orthopedic surgeon L. Phaon Gambee, M.D. Tr. 842-43; 545. Those doctors

noted "no sensory dysfunction . . . no motor dysfunction . . . no reflex loss . . . [i]n essence, no hard neurological findings except for the small disc herniation." Id. Moreover, they would "discount" his hyperextension complaints because his neck was "vigorously" hyperextended during his back examination without neck or upper extremity complaints. Id.

The ALJ explained that when plaintiff was evaluated by neurological surgeon Dr. David J. Silver, M.D. in October 1997, Dr. Silver was "hard-pressed to explain the worsening pain in [plaintiff's] thoracic and lumbar areas in physical terms." Tr. 843; 394. Dr. Silver also noted that while the 1997 MRI revealed a "small right paracentral disc protrusion," a 1998 MRI showed that the disc protrusion appeared even smaller. Tr. 493. Similarly, when plaintiff was examined by Thomas Rosenbaum, M.D., he noted that plaintiff's symptoms did not correspond to a 2004 MRI. Tr. 842; 435. Finally, as discussed above, despite plaintiff's claims of persistent debilitating pain, the ALJ found that plaintiff's visits to Dr. Dordevich between February 1999 and October 2004 did not include "any mention of neck or back pain, limitation in motion, neurological defects, or sensory complaints." Tr. 844. These specific examples clearly support the ALJ's finding that the objective medical evidence did not always support plaintiff's pain allegations. Thus, while these findings are not alone dispositive of plaintiff's credibility, it was not improper for the ALJ to find that plaintiff's pain allegations

were not necessarily corroborated by the objective medication evidence. <u>Rollins</u>, 261 F.3d at 857.

Finally, plaintiff objects to the ALJ's observation during the hearings in 2007 and 2011 that "claimant's testimony of being able to sit for only 10 minutes at a time is inconsistent with his actions at either . . . with both [] lasting more than an hour." Tr. 841. Plaintiff asserts that the ALJ discredited his pain testimony because he did not exhibit pain symptoms at the hearing. <u>See Gallant v. Heckler</u>, 753 F.2d 1450, 1455 (9th Cir. 1984). The ALJ stated he was only observing the inconsistency inherent in plaintiff's ability to sit for substantially more than ten minutes at a time despite his testimony to the contrary. Tr. 841. However, the Court does not find the distinction compelling because plaintiff alleged he could sit for no longer than ten minutes during the adjudication period, not on the dates of the hearings. Tr. 820.

Nonetheless, the ALJ's overall credibility conclusion may be upheld even if some of the ALJ's reasons for rejecting the claimant's testimony are upheld. <u>Batson</u>, 359 F.3d at 1197; <u>see also Carmickle v. Comm'r, Soc. Sec. Admin.</u>, 533 F.3d 1155, 1162-63. Therefore, the Court does not disturb the ALJ's ultimate credibility finding.

III. <u>Dr. Dordevich's Opinions</u>

Plaintiff argues that the ALJ improperly discounted medical opinions provided by Dr. Dordevich in affording them "little weight." Tr. 845. The ALJ found that "the testimony and more

Page 17 - OPINION AND ORDER

recent reports from this primary care provider are not supported by the objective records, and more importantly, are contradicted by his own earlier opinions, which are consistent with the records." Tr. 845 The ALJ explained that "[i]t is evident that [the] role of this individual evolved from that of a primary care provider to that of an active advocate for the claimant." Tr. 843. Plaintiff contends that the ALJ's rationale was unfounded – that Dr. Dordevich's opinion did not change over time, and that the ALJ "cited absolutely no evidence of improper advocacy." Pl.'s Op. Br. at 16-17.

There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors. Lester, 81 F.3d at 830. In considering medical evidence, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir.2001). More weight is afforded to "opinions that are explained than to those that are not, . . . and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." Id. (citations omitted). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons for doing so. Bayliss, 427 F.3d at 1216 (citing Lester, 81 F.3d at 830-31). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected for specific and legitimate reasons. Id. An ALJ

is not required to accept a doctor's opinion that is brief, conclusory, or inadequately supported by clinical findings. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

In support of his finding, the ALJ explained that Dr. Dordevich's opinions changed over time, and that his more recent opinions were not based on objective medical evidence. Tr. 844-45. Most recently, Dr. Dordevich testified at the 2011 hearing that he believed that plaintiff's cervical disc disease was progressively worsening, as evidenced by the changes seen when comparing MRI results between 1997 and 2004. Tr. 910. Dr. Dordevich further testified that progressive degenerative cervical disc disease could have caused plaintiff's alleged aggravating neck and headache pain prior to 2002. Tr. 916.

In May 2005, several months after plaintiff exacerbated his neck injury in October 2004, Dr. Dordevich wrote a letter to the Social Security Administration in which he stated that plaintiff had severe degenerative arthritic changes to his cervical spine related to his 1997 work accident. Tr. 136. Dr. Dordevich further noted that plaintiff had cervical radiculopathy, foraminal stenosis, and sensory loss, precluding work activity with his right and left upper extremity, and inability to sit or stand for significant periods of time. Id. Dr. Dordevich concluded that plaintiff "has not been able to able to work since 6/3/97, the date of the injury" and that "[h]e has been disabled since that date and is currently disabled." Id. Two years later in 2007, Dr. Dordevich completed a checkbox form which indicated that

Page 19 - OPINION AND ORDER

plaintiff had not been capable of sedentary or light work, and had severe limitations in ability to maintain concentration, perform work activities on a schedule and maintain regular attendance, and perform at a consistent pace. Tr. 132-35. Dr. Dordevich added a hand-written note stating it was his "opinion that patient's inability to work is not psychologically based. His inability to work is based on physical limitations and pain associated with the accident of 9/3/97 [sic]." Tr. 134.

The ALJ found that Dr. Dordevich's opinion that plaintiff was disabled from the alleged onset date in 1997 until 2011 was contradicted by his earlier opinions and treatment notes. Indeed, a review of the record shows that in July 1997, Dr. Dordevich released plaintiff to work without restrictions. Tr. 370. In February 1998, Dr. Dordevich again released plaintiff to work, this time with restrictions for light duty with some limitations. Tr. 277-80. Furthermore, at the 2011 hearing, Dr. Dordevich stated that in 1998, he agreed with the physical capacity evaluation which determined that plaintiff was capable of light duty work. Tr. 842, 907. Significantly, the ALJ noted that at that time, "the impartial therapists working with and assessing the claimant, as well as the primary care provider, Dr. Dordevich, were all in agreement on functional level." Tr. 843.

Based on the forgoing, the Court is somewhat perplexed by plaintiff's contention that Dr. Dordevich's opinions did not shift over time; in 1998, during the adjudication period, Dr. Dordevich agreed that plaintiff was capable of light work;

Page 20 - OPINION AND ORDER

however, by 2005, Dr. Dordevich averred that plaintiff was completely disabled, and had been so since 1997. Tr. 136, 907. These opinions are in direct conflict.

Moreover, Dr. Dordevich's nearly illegible treatment notes during the adjudication period do indeed indicate subjective pain complaints, but despite plaintiff's contentions, only mention extremity tingling once, on April 3, 1998. Pl.'s Op. Br. at 15; Tr. 166. Dr. Dordevich's notes prior to 2004 regularly report intact reflexes, adequate strength, and normal neurological findings. Tr. 150-57, 160, 164, 165. Further, as noted above, after February 23, 1999, there are no records regarding plaintiff's work injury until nearly five years later, in October 2004. Tr. 169-71.

Plaintiff's assertion that Dr. Dordevich's more recent opinions "are supported by the objective medical evidence, including the progressive worsening of plaintiff's cervical degenerative disc disease on each subsequent MRI" is unavailing. Pl.'s Op. Br. at 17. As previously discussed, Dr. Silver found that plaintiff's disc herniation actually appeared to decrease in between the two MRI's during the adjudication period. Tr. 493. Further, the complete absence of objective medical evidence regarding the status of plaintiff's allegedly disabling impairments between 1999 and 2002 supports the ALJ's finding that Dr. Dordevich's opinions regarding plaintiff's condition during that time are merely conjectural. Tr. 845.

Page 21 - OPINION AND ORDER

In sum, substantial evidence supports the ALJ's finding that Dr. Dordevich's retrospective opinions regarding plaintiff's functional ability conflict with the opinions he expressed contemporaneous to the adjudication period. Such inconsistency is a legitimate reason to afford Dr. Dordevich's opinions diminished weight.[1] Bayliss, 427 F.3d at 1216. Moreover, even if the ALJ's interpretation is one of several reasonable interpretations of the evidence, it is rational and based on substantial evidence. Therefore, the ALJ's conclusion is upheld. Burch, 400 F.3d at 679.

## IV. Lay Witness Testimony

Plaintiff alleges that the ALJ erred by discrediting the statements of Lisa Lee Jones-Garner, plaintiff's niece, which was offered in the form of a letter in 2007. Tr. 85. An ALJ must consider lay testimony as to a claimant's symptoms, and must also provide a reason germane to the witness in order to discredit her. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009). Here, the ALJ provided several germane reasons for discrediting the witness: (1) the degree of impairment she described was unsupported by the objective medical records and inconsistent with medical reports of plaintiff's functional and actual abilities; (2) she did not consider the date last insured in describing claimant; and (3) her allegation that plaintiff was

---

[1] Because the Court affirms the ALJ's finding regarding the weight afforded the opinions of Dr. Dordevich, it is unnecessary for the Court to comment on whether Dr. Dordevich's role as plaintiff's primary care provider changed to active disability advocate, as the ALJ suggested. Tr. 843-44.

unable to spell and could barely read was contradicted by documents found in the record. Tr. 841.

Ms. Jones-Garner asserted that since the day of the accident, plaintiff has been unable to work. Tr. 85. She stated that he is currently in constant neck and back pain even when at rest, cannot stand or sit for any significant amount of time, cannot lift his head to normal position most days, has severe headaches and tingling arms, cannot lift a gallon of milk, is unable to sleep, and is depressed, among other things. Id. While Jones-Garner stated that plaintiff is unable to lift a gallon of milk, a number of sources in the record suggests that plaintiff could lift up to 25 pounds, at least during the adjudication period. Tr. 85, 210, 502. Similarly, medical records from the relevant period reflect that plaintiff was able to maintain normal posture, which contrasts Jones-Garner's allegation that plaintiff cannot maintain normal head positioning. Tr. 210, 249.

Further, the ALJ's observation that plaintiff's spelling and reading levels are greater than Jones-Garner alleged are supported in the record. Tr. 85, 841. The ALJ mentioned that handwritten documents in the record contradict the contention that plaintiff cannot spell and can hardly read, which is supported by substantial evidence. Tr. 115-22 (benefits application), 563-564 (1997 handwritten note). Plaintiff's contention that the ALJ referred to an "unspecified" note and that he could not "know if plaintiff had help from a friend or family member in completing the note" are unconvincing. Pl.'s

Page 23 - OPINION AND ORDER

Rep. Br. at 9. The ALJ specifically identified the note as that written on August 27, 1997; moreover, the note was written in the first person and signed by plaintiff. Tr. 563-64, 841.

Thus, the ALJ supported his finding that inconsistencies between the lay witness statements and the record diminished her credibility. Tr. 841. Even if the ALJ was mistaken as to the 1997 note writer's true identity, the other reasons provided were germane to the lay witness. Thus, the ALJ's finding must be upheld.

V. <u>Manipulative Limitations</u>

Finally, plaintiff argues that the ALJ failed to account for alleged manipulative limitations when questioning the VE and identifying jobs in the national economy. Indeed, the ALJ did not mention the vocational testing report dated May 5, 1998, which determined that plaintiff had extremely limited finger and manual dexterity. Tr. 218. However, "in interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence." <u>Howard ex rel. Wolff v. Barnhart</u>, 341 F.3d 1006, 1012 (9th Cir. 2003)(internal quotations omitted). Plaintiff argues that his limited dexterity precludes him from performing the three jobs the ALJ identified at step five, as the jobs identified generally require manual dexterity. Pl.'s Rep. Br. at 3. The Commissioner maintains that the ALJ was not required to address the report insofar as it was not significant, probative evidence. Def.'s Resp. Br. at 12. In support, the Commissioner directs the Court to the cautious approach urged by

Page 24 - OPINION AND ORDER

the test's administrator, vocational evaluator Roy Katzen, M.S.,
C.R.C.:

> [g]reat care must be exercised in interpreting
> [plaintiff's] test results. This counselor's
> observations may indicate that some of these low scores
> are more a measure of the worker's pain level and/or
> anxiety rather than aptitudes . . . any decisions
> regarding [plaintiff's] vocational future should not be
> based solely on these test results...

Tr. 219.

While Mr. Katzen's report may not be probative alone, the
record reflects that plaintiff was administered a Minnesota Rate
of Manipulation Test in conjunction with the work capacity
evaluation in April 1998, wherein he scored in the very low range
of dexterity. Tr. 445. The ALJ purported to give the assessment
great weight. Tr. 843. Thus, as two independent pieces of
evidence support plaintiff's allegation that he had significant
dexterity limitations during the adjudication period, it was
improper for the ALJ not to address the issue. Because such
limitations were not included in the hypothetical questions to
the VE, the Commissioner failed to carry the burden of proof at
step five to identify jobs in the national economy.

On remand, the ALJ should assess the foregoing evidence of
plaintiff's manipulation limitations during the relevant period.
If the evidence is determined to be probative of a manipulative
impairment, the ALJ must identify jobs in the national economy
which plaintiff is capable of performing at step five.

Page 25 - OPINION AND ORDER

**CONCLUSION**

The Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

Dated this ___ day of November 2013.

December

_____
Ann Aiken
United States District Judge